LitteetoN, Judge,
delivered the opinion of the court:
Plaintiff sues under the act of June 25, 1938, 52 Stat. 1197, to recover $29,238.05 for increased costs alleged to have been incurred and paid as a result of the enactment of the National Industrial Recovery Act, approved June 16, 1933, in the performance of a contract with the defendant entered into November 26,1932. This amount is made up of three items: First, a wage increase for common labor on October 18,1933, from twenty-five to thirty-five cents an hour, which increase, from October 18 to completion of the contract, amounted to $13,615.30; second, a further increase on January 19, 1934, *106 in the rate of wage for common labor from thirty-five to forty cents an hour, which increase, to date of completion of the contract, amounted to $3,122.75; and, third, a claim for $12,500, or, in the alternative, $9,368.28, which it is alleged arose under the N. I. R. A. in connection with subcontracts with the Herzog Iron Works and the Flour City Ornamental Works.
The third item of the claim must be denied because the pi’oof is not sufficient to establish that either the amount of $12,500 or $9,368.28, or any determinable portion thereof was the direct result of the enactment of the National Industrial Recovery Act. See findings 14 to 17, inclusive.
The other two items, representing increased wages paid between October 18,1933, and November 3,1934, require some discussion in connection with the interpretation of the act of June 25, 1938, 52 Stat. 1197, under which the suit was brought and on which the court must base its decision as to whether the plaintiff is entitled to a judgment for all or a part of the $16,738.05, increased wages paid. The facts with reference to these two wage increases of ten cents an hour on October 18, 1933, and five cents an hour on January 19, 1934, showing how the increases came about and why they were made, are set forth in findings 1 to 13, inclusive. In substance the facts established show that plaintiff and the defendant entered into a contract on November 26, 1932, for the construction of the U. S. Customs House and Appraisers’ Stores at Philadelphia for a fixed price. This contract contained no provision for a specific wage rate other than that provided by the act of March 3, 1931, 46 Stat. 1494, which required that every contract with the Government in excess of five thousand dollars in amount which required or involved the employment of laborers or mechanics in the construction, alteration, and/or repairs of any public buildings of the United States or the District of Columbia, should contain a provision to the effect that the rate of wage for all laborers and mechanics employed by the contractor, or any subcontractor, on the public buildings, should be not less than the prevailing rate of wages for work of a similar nature in the city, town, or other civil division of a State in which the public build *107 ings were located, and a further provision that in case any dispute should arise as to the prevailing rates of wages for work of a similar nature applicable to- the contract which could not be adjusted by the contracting officer the matter should be referred to the Secretary of Labor for determination and his decision thereon should be conclusive on ail the parties to the contract.
Plaintiff’s subcontractor for the demolition work commenced late in 1932 to pay his common laborers fifteen cents an hour, which he contended was the prevailing rate. Plaintiff thought that the rate should be higher and requested the Department of Labor to send a representative to fix the prevailing rate of wage to be paid under the contract. The Department of Labor did so and plaintiff and-this representative, after making an investigation and ascertaining that contractors in Philadelphia were paying from fifteen to twenty-five cents an hour, determined that twenty-five cents was the prevailing rate and posted that wage rate at the site of the work. Plaintiff and all its subcontractors paid this rate of wage until October 18, 1933. On June 16, 1933, the National Industrial Recovery Act, 48 Stat. 195, was approved. Until that time, and for sometime thereafter, nothing occurred which required that plaintiff give consideration to the matter of any increase in the rate of wages so determined to be the prevailing rate in that locality. After the enactment of the National Industrial Recovery Act the plain - tiff, as well as the other contractors, was asked by the Government to increase the wage rate for common labor to forty cents an hour. Plaintiff did not then agree to do this, its position being that its contract called for payment at the prevailing rate which had been established, and which it was paying, and that if the Government wished to so increase the cost of performance of the contract it should, bear the “inoreased cost”. The President’s Reemployment Agreement was issued July 27,1933, and sent to all employers and contractors and they were asked to sign it. This Reemployment Agreement provided in part as follows:
During the period of the President’s emergency reemployment drive, that is to say, from August 1 to December 31, 1933, or to any earlier- date of approval of *108 a Code of Fair Competition to which he is subject, the undersigned hereby agrees with the President as follows: * * * * *
(3) Not to employ any factory or mechanical worker or artisan more than a maximum week of 35 hours until December 31, 1933, but with the right to work a maximum week of 40 hours for any 6 weeks within this period; and not to employ any worker more than 8 hours in any 1 day. * * * t- *
(6) Not to pay any employee of the classes mentioned in paragraph (3) less than 40 cents per hour unless the hourly rate for the same class of work on July 15,1929, was less than 40 cents per hour, in which latter case not to pay less than the hourly rate on July 15, 1929, and in no event less than 30 cents per hour.
The Government did not agree to reimburse plaintiff for any wage increase that it had been asked to make and plaintiff did not sign the President’s Reemployment Agreement until January 19, 1934, which was shortly before the National Recovery Code for the Construction Industry was approved by the President on January 31, 1934, to become effective March 2, 1934. However, plaintiff, oil October 18, 1933, did increase the rate of wage being paid for common labor from the prevailing rate of twenty-five to thirty-five cents by reason of the conditions and circumstances existing and brought about by reason of the enactment and administration of the National Industrial Recovery Act, as set forth in more detail in the findings. When the plaintiff signed the Reemployment Agreement on January 19, plaintiff made a further increase in the rate of wage being paid for common labor from thirty-five to forty cents an hour, and that rate was thereafter paid until the contract was completed. Under the facts and circumstances disclosed in the findings, we are of opinion that these two wage increases represented, increased costs incurred as a result of the enactment of the National Industrial Recovery Act within the meaning of the act of June 25,1938, supra. All the facts of record combine to show that these wage increases were brought about and were caused by the enactment of the National Industrial Recovery Act and its administration in the locality where *109 the plaintiff was performing its contract for the defendant. There is no evidence whatever to show that any material factor, instance, or condition independent of the enactment of the National Industrial Eecovery Act entered into the making of these increases other than what it was necessary for plaintiff to do as a part of the general program under the National Industrial Eecovery Act which was being put into effect, as far as possible, in the locality where the work called for by plaintiff’s contract was being performed.
Counsel for the defendant makes three contentions against the allowance by the court of any portion of the total wage increases of $16,138.05.
The first contention is that plaintiff had not, at that time, October 18, 1933, signed or manifested any intention of complying with the Eeemployment Agreement and was not subject to any code so that no Government Eegulation acted upon the plaintiff and resulted in the increase which it granted; that the first increase was due to economic circumstances collaterally resulting from the Eecovery Act and plainly not a legal result’, determined by the usual principles of legal cause and legal liability. (Citing Dravo Corporation v. United States, 93 C. Cls. 759). The second contention of counsel for the defendant is that “the 1934 and 1938 statutes, [48 Stat. 974 and 52 Stat. 1197] were intended to compensate those who did go along with the Government’s program for improving economic conditions and for promoting employment, not for those who held back upon some ground which they regarded as justifiable.” The third contention is that no portion of the total amount of $16,738.05 increased wages of 10 cents and 5 cents per hour can be allowed as having resulted from the enactment of the National Industrial Eecovery Act because the plaintiff’s employees asked for an increase and threatened to quit if an increase was not allowed.
In view of the facts and circumstances of this case and the provisions of the act of June 25, 1938, under which the suit is brought, as we think it should be interpreted, we are of opinion that there is no merit in any of the defendant’s contentions and that the plaintiff is justly, fairly, and equitably *110 entitled under the facts and the provisions of the act of 1938 to judgment for $16,788.05.
The position of counsel for the defendant is clearly a misinterpretation of the act of June 25, 1938, authorizing suits by contractors and entry of judgments thereon for increased costs. In substance, defendant’s counsel would have the court so restrict the express and obviously intended broad language of the 1938 act so that it would apply solely to those cases and periods of time where the contractor manifests an intention and willingness to comply with the request of the Government officers for increase in labor wages, or the signing of the reemployment agreement, or manifestation of a willingness and intention of the contractor to comply with the National Industrial Recovery Act program as set forth and provided in the President’s Reemployment Agreement form, or an applicable code. In order to sustain the contentions of counsel for defendant and deny plaintiff recovery of the two wage increases on October 18, 1933 and January 19,1934 it would be necessary for the court to hold and decide (1) that the 1938 statute (52 Stat. 1197) is no broader in its basis for allowance'of increased costs, for which Congress intended to assume an obligation for reimbursement, than that provided under and by the act of June 16,1934 (48 Stat. 974), authorizing settlements for increased costs by the Comptroller General; (2) that in the absence of compliance with the requests of the Government officers concerned, the Reemployment Agreement or a code, or the clear manifestation of an intention and willingness to so comply, any increased costs incurred or paid must be held by the court to have been due to economic circumstances collaterally resulting from the enactment of the National Industrial Recovery Act and, therefore, not caused by or attributable to the enactment of the National Industrial Recovery Act as a legal result, determined by the usual principles of legal cause and legal ’ liability, for, as it is argued, the 1938 statute was intended only for the benefit of those Government contractors who complied and cooperated with requests, proposed agreements, codes and regulations of the Government and not for those contractors who, while they may have substantially increased the wages paid after June 16, 1933, did not fully cooperate *111 or strictly comply witlx the requests, proposed agreements, or regulations for reasons which they regarded at the time as justifiable. We are of opinioix that Congress did not, in the Act of June 25,1938, intend that the court should so hold.
An analysis of the acts of 1934 and 1938 for the relief of Government contractors for increased costs incurred by reason of and in connection with the enactment of the National Industrial Recovery Act of June 16, 1933, the legislative history of those acts, and a number of private acts passed by Congress prior to and during the time the act of 1938 was being considered, for the allowance and payment to contractors of increased costs after June 16,1933, which had been denied by the Comptroller General under the 1934 act, shows that the 1938 act intended, as the plain, obvious and natural meaning of its language discloses, that judgments for increased costs should be allowed and entered where it appears from the evidence that the increased costs claimed or allowed resulted in fact directly from, and by reason of the enactment of the National Industrial Recovery Act. In other words, if it appears from the evidence submitted that the whole or some determinable portion of the increased costs claimed may fairly and equitably be said to have been directly attributable to, caused, brought about, or made necessary by reason of the existence of the National Industrial Recovery Act and its administration in the particular locality, such increased costs should be allowed. While it is true, as set forth in section 4 of the 1938 act, that Congress stated its intention that the act should not be interpreted as raising any presumption or conclusion of fact or law but should be held solely to provide for trial upon facts as may be alleged, this expression of intention went no further than to make it clear that contractors should have the burden and the responsibility of establishing by proof satisfactory to the court, that increased costs were incurred after June 16, 1933, “as a result of the enactment of the National Industrial Recovery Act,” for which, and in such event, an obligation to pay had been assumed in sections 1 and 3 of the act. The phrase “increased costs incurred as a result of the enactment of the National Industrial Recovery Act” clearly means, and we think was intended to mean, any increased costs which the *112 facts show to the satisfaction of the court, when considered on a fair and equitable basis, were made necessary and were directly attributable in fact to the enactment, existence, administration and operation, during the period of the claim, of the National Industrial Recovery Act. The allowance of such increased costs is in no way by any language express or implied limited to increased costs so incurred after compliance or manifestation of an intention and willingness to comply with Government requests, rules, regulations or proposed agreements under the National Industrial Recovery Act.
Proof that such willingness or intention existed at the time the increased costs were incurred would establish no different facts so far as cause, effect and result are concerned. It might tend to strengthen the moral phase of the claim, if the allowance or the right or authority of the court to allow the claim depended upon moral considerations. But, as we shall hereinafter attempt to show, Congress has in the 1938 act considered and disposed of any moral phase of the matter and has fixed and declared in sections 1 and 3 the basis for the legal liability, which, in its wisdom, it decided the government should assume. The fact that a contractor was compelled, as the proof shows was the case here, to increase his costs because and as a result of the enactment and administration of the National Industrial Recovery Act when he did not wish to do so because he did not feel that he should bear the increased costs so brought about when he had a fixed price prevailing wage contract previously made, serves to show that such increased costs resulted from the enactment of the Recovery Act. Of course, such an increase in cost, whether willingly or unwillingly made, might be the result of factors too remote to be attributed to the National Industrial Recovery Act, such as we found to be the case as to claim I in Dravo Corporation v. United States, 93 C. Cls. 734, 759, but that is a matter which relates to the proof and the application of an accepted legal proposition.
Prior to the passage of the act of 1934 vesting jurisdiction in the Comptroller General to determine and allow claims and the enactment of the act of 1938 conferring jurisdiction upon this court to hear, determine, and enter judgment against the *113 United States upon claims, there was no legal liability on the United States fox- any iixcreased costs incurred by Government contractors by reason of, attributable to, or resulting from the enactment, operation, and administration of the National Industrial Recovery Act, whether contractors complied or did not comply with the provisions and purposes of that act and the rules, regulations, and requests of the Government officials thereunder. Horowitz v. United States, 261 U. S. 458, 461. As pointed out in that case, the Government is not liable in its capacity as a contractor for increased costs or damages resulting from its actions in its purely sovereign capacity. But the Congress may, as it did here, consent to be sued for such increased costs on such conditions as it may prescribe and assume an obligation to pay such increased costs, through reimbursement to the contractor by reason of such sovereign act, upon the determination by the tribunal designated, that the facts proven by the contractor fairly and equitably show that the increased cost of performance of a contract previously entered into was the result of, that is, directly resulting from, attributable to, or caused by such sovereign act. That, in our opinioix, is what the Congress did when it enacted the act of June 25,1938, as is fairly shown by the title and all the language in the body of the act. Therefore when the evidence submitted in any case fairly and equitably shows that an increased cost incurred during the performance of. a contract was, in fact, directly attributable to the sovereign act in connection with which an obligation to pay is assumed, such increased cost legally results from such sovereign act, and under the language of the act assuming the obligation such increased cost is determinable by the usual principles of legal cause and legal liability. This is so for the reason that in the enactment of the Jurisdictional Act of 1938 Congress has defined in language sufficiently clear as not to admit of doubt, the legal result and the legal liability. The Jurisdictional Act makes the enactment, operation and administration of the National Industrial Recovery Act the legal cause; the incurring of the increased costs shown to have been directly caused by or attributable to the National Industrial Recovery Act, the legal result, and the consent to be sued and the assumption *114 of a liability to pay, when sucb cause and result are shown, the legal liability. Thus, the usual standards and principles of legal cause and effect may easily and readily be applied to the legal obligation expressly assumed by the act of June 25, 1938 on the condition specified, namely, the “result of the enactment of the National Industrial Recovery Act.”
The foregoing conclusions are, we think, fully supported by the history of the act of June 16, 1934, for the relief of Government contractors whose costs of performance were increased as a result of compliance with the National Industrial Recovery Act and the act of June 25, 1938, conferring jurisdiction upon this court to hear, determine, and enter judgment upon claims of Goverment contractors whose costs of performance were increased as a result of the enactment of the National Industrial Recovery Act.
It is clear enough that the assumption of an obligation for increased costs conditioned on proof of compliance is much more limited than the assumption of a liability and the granting of consent to be sued for increased costs conditioned only on proof that they were the result of the enactment of the act of June 16, 1933. An increased cost results from the enactment of a statute when the existence and administration of the statute in fact directly cause or bring about the whole or a determinable part of such increased cost. It should be noted that the first act in 1934 not only conditioned the allowance of claims to those increased costs which were the result of compliance with the National Industrial Recovery Act (and this meant compliance with the requests of the proper Government officers and the President’s Reemployment Agreement and approved codes) but it conditioned the allowance of claims to those increased costs which were incurred after August 10,1933, in the performance of contracts entered into prior thereto. The date of August 10,1933, was fixed for the reason that on that date the President issued a proclamation requiring that all Government contracts thereafter executed should contain a clause stipulating for compliance by the contractors with the President’s Reemployment Agreement and the applicable code. The 1934 act further provided that any contractor desiring adjustment and settlement under that act with respect to any such contract *115 for increased costs incurred after August 10, 1933, by reason of the compliance above-mentioned, should file with the department or administrative establishment concerned a verified claim itemizing such additional costs; that the head of the department or establishment should examine the claim and transmit it to the Comptroller General with his administrative findings of fact and recommendations with respect thereto. Section 2 provided that in no event should any allowance exceed the amount by which the cost of performance of such part of the contract as was performed subsequent to August 10,1933, was directly increased by reason of' compliance with a code of fair competition or with an agreement with the President. And section 4 provided that no claim under that act should be considered or allowed unless-presented within six months after the date.of approval of the act or at the option of the contractor within six months after-completion of the contract, except in the discretion of the Comptroller General for good cause shown.
This act of 1934 was introduced and enacted as a result of a letter of recommendation from the Secretary of the Treasury to the President of the Senate and the Speaker of the House of Representatives on April 4, 1934, as follows:
I have the honor to transmit herewith, with recommendation that it be enacted into law, draft of a bill to provide relief to Government contractors operating under codes.
The President, on August 6, 1933, publicly announced through the National Industrial Recovery Administration that he would recommend the enactment of such relief legislation, and, in reliance upon this announcement, many contractors have faithfully performed their contracts rather than seek cancellation thereof. In keeping with this promise, the President, through the executive council, appointed an interdepartmental committee to consider this entire matter and to draft a proposed bill. The bill submitted herewith is the result of that committee’s thorough deliberations, and has the committee’s unanimous approval.
The bill is intended to afford relief to Government contractors who have loyally cooperated with the President’s recovery program by fully complying with the-codes of fair competition applicable to their trade or industry or by entering into and fully complying with *116 the terms of the President’s Reemployment Agreement. The bill provides for reimbursing such contractors for the increased costs incurred by them as a result of such compliance. This relief is extended to subcontractors and material men.
The Government is safeguarded by provisions imposing upon the claimants the burden of proving that they cooperated with the President’s recovery program, as above stated, and the exact, amount of increased costs directly incurred by them as a result. In order to eliminate any possibility of excessive profits, the bill expressly provides that in no event shall any award be made which would result in a net profit to the claimant exceeding 7 percent on the contract in respect of which the claim is made.
Reimbursement is limited to those contractors who made their contracts or submitted their bids prior to August 10, 1933, the date of an Executive order requiring that contracts thereafter executed should contain a clause requiring compliance with the President’s Reemployment Agreement or the applicable code, and where the performance took place wholly or in part after that date. v
The bill further provides that the President shall establish or designate the agency or agencies to pass upon such claims.
In the administration of the act of 1934 for the settlement of claims by the Comptroller General many claims of contractors for reimbursement for increased costs after August 10, 1933, as a direct result of the operation, the administration and effect of the National Industrial Recovery Act were denied because the contractors making the claims were unable to show that they had strictly complied with the President’s Reemployment Agreement, or with an applicable code. Many of these contractors petitioned Congress for relief and reimbursement for such increased costs notwithstanding their failure of compliance, and between August 3, 1937, and June 29, 1938, the Congress passed ten private acts allowing and paying such claims notwithstanding lack of compliance by the contractors.[1] The facts and circumstances existing and *117 tbe committee reports on the claims involved in the private acts mentioned show that the Congress came to the conclusion, after a trial of the act of 1934 with its limitations, that increased costs incurred after June 16, 1933, and resulting from the enactment of the Industrial Eeeovery Act should, in justice and equity, be allowed in addition to cost of con-’ tract performance after August 10,1933, which “was directly increased by reason of compliance.” Some of these private acts were for the payment of claims of contractors for increased costs “growing out of a contract * * * on account of the National Industrial Eeeovery Act.” Another was for increased labor costs- incurred by the particular contractor because other contractors doing similar work in the same vicinity raised their wages to comply with the President’s Eeemployment Agreement, and the contractor in question was forced to do likewise in order to retain his employees. In the other cases, the contractors had signed the President’s Eeemployment Agreement but had not strictly complied with it, or an applicable code. In one case (Ch. 615, 50 Stat. 1050) an increase of 10 percent in the wages of factory and office employees was allowed, which increase in wages was the result of collective bargaining after negotiations with employees acting under the provisions of section 7 of the National Industrial Eeeovery Act. There was also allowed another increase in wages of 614 percent which resulted from a decision by arbitrators to whom differences between the corporation and its employees had been referred for settlement.
It is true that the enactments of these special acts, paying claims of contractors for increased costs incurred as a result of the National Industrial Eeeovery Act, have no controlling effect upon the jurisdiction or authority of the court to allow the claim in the case at bar, because the payment of a claim by Congress does not, of itself, give the court jurisdiction to enter judgment upon a similar claim unless it is within the terms of the Act granting consent to be sued and conferring jurisdiction. United States v. McDougall's Administrator, 121 U. S. 89, 96-102. However, the facts, circumstances, and conditions surrounding the consideration and payment of the claims mentioned in the several private acts, *118 while the act of June 16, 1934, was in effect and while the act of June 25, 1938, was under consideration, throw considerable light and have an important bearing upon the reason for and the intent and purpose of the act of June 25, 1938, which included all claims for increased costs after June 16, 1933. In effect the act of June 25, 1938, repealed all the provisions of the prior act of June 16,1934, except those expressly retained, and made the result flowing from the enactment of the National Industrial Recovery Act the basis of the right of the contractor to judgment rather than compliance after August 10, 1933, with the President’s Reemployment Agreement or a code, which compliance resulted in the cost of performance of a contract- being thereafter directly increased. During the time the claims involved in the several private acts, which were not otherwise allowable under the act of 1934 because there had been a lack of compliance, were being considered, the same Congressional committees had under consideration bills for amendments or changes in the provisions of the 1934 act.
About August 14, 1935, a bill, H. R. 7293, was introduced to amend the 1934 act so as to include within its terms sub-subcontractors and materialmen and, also, to provide that if an' employer or contractor coming within the provisions of the 1934 act, as amended, complied with a National Industrial Recovery Act code effective before August 10,1933, he should have the additional cost so incurred by reason of such compliance. The last-mentioned proposed provision was found to be inadequate because many of the National Recovery Act codes did not become effective until long after August 10, 1933. The code for the construction industry did not become effective until March 2, 1934. February 24, 1936, a bill, S-4377, was introduced which also had for its purpose the amendment of the act of June 16, 1934, with the additional provisions — first, that upon the rejection, in whole or in part, of a claim by the Comptroller General under the 1934 act this court should have jurisdiction to hear, determine, and render judgment upon such claims in the same manner as provided under section 145 of the Judicial code; and, second, that “The additional cost incurred shall be deemed to be the amount by which the actual cost of performance by the *119 contractor, subcontractor, or materialmen subsequent to June 16, 1933, exceeded the prevailing cost of labor and material at tile time or times the contract was entered into with the United States: Provided, however, That in no event shall any allowance exceed the amount by which the cost of performance of such part of the contract as was performed subsequently to June 16,1933, was increased by reason of a code or codes of fair competition, or with an agreement with the President, as aforesaid, or by reason of the increased cost of labor and materials due to the enactment of the National Industrial Recovery AetP (Italics ours.) (See Report 2293 of Senate Committee on Education and Labor, 74th Cong., 2d sess., June 1, 1936, on H. R. No. 7293, which was the same as S-4377 with some amendments). It will be seen that this quoted amendment, especially the last clause of the ;proviso, was a material departure from the existing act as to the period and basis for allowance. This quoted, proposed, change became in substance the basic provisions of the 1938 act. In recommending enactment of the bill S-4377, the provisions of which were later incorporated in H. It. 7293, also recommended by the committee, the Secretary of the Interior in a letter of May 20,1936, to the Chairman of the Committee on Education and Labor, stated, in part, that “The second change in this connection is an amendment allowing compensation for damages suffered as a result of ‘the enactment of the National Industrial Recovery Act’ even before the codes or agreements went into effect under that act. If a contractor is able to prove such damage, the equities of his case would seem no different from the equities of cases involving damage suffered as a result of the adoption of and compliance with codes. Whether there exists any adequate or satisfactory basis for determining damage alleged to have been suffered as a result of the mere enactment of the statute, I am not able to say.” The problem last mentioned by the Secretary was one which Congress, when enacting the act of June 25, 1938, left to this court with the direction in section 3 that it should be solved “on a fair and equitable basis.” The Secretary of Labor recommended the enactment of the new bill S. 4377 April 20, 1936. Its enactment was also recommended by the Administrator of the Veterans’ Administration May 21,1936. *120 However, the Comptroller General in a letter of April 22, 1936, recommended against its enactment because of the provision for allowance of increased costs as may have been incurred after June 16, 1933, due to the enactment of the National Industrial Recovery Act. In opposing the enactment of the more liberal provisions than were contained in the act of 1934, the Comptroller General said:
The act of June 16, 1934, did not allow such increased costs prior to August 10, 1933, and it is not clear why it is now proposed to push back the date to June 16, 1933, from which such increased costs may be allowed. As stated, the requirement for compliance with the code or Reemployment Agreements as to contracts thereafter entered into did not exist until the Executive order of August 10,1933, and there was no requirement that contractors who entered into contracts prior to August 10, 1933, should comply with such codes until after the codes had been approved or the contractors had signed the Reemployment Agreement which was not available for signature until after July 20, 1933 [July 21, 1933]. The codes applicable to the various industries were approved from time to time. There appears to be no good reason why such alleged increased cost should be computed from June 16,1933, as proposed in the bill, rather than from August 10, 1933, as stated in the act of June 16,1934.
‡ ‡ $
The existing act of June 16, 1934, limits the amount to be paid to such increased costs as were incurred by the contractor or subcontractor performing work or furnishing material or necessary fuel direct to the contractor by reason of compliance with the applicable code or with the President’s Reemployment Agreement. Section 2 of the bill would broaden the relief extended by providing that the additional costs incurred shall be deemed to be the amount by which the actual cost of performance by the contractor, subcontractor, or ma-terialman subsequent to June 16, 1933, “exceeded the prevailing cost of labor and material at the time or times the contract was entered into with the United States”, with the proviso that in no event should any allowance exceed the amount by which the cost of performance of such part of the contract as was performed subsequently to June 16, 1933, was increased by reason of a code or codes of fair competition or with an agreement with *121 the President or by reason of tbe increased cost of labor and materials due to tbe enactment of the National Industrial Recovery Act. That is to say, the act of June 16, 1934, limits the relief thereunder to the increased costs sustained by the contractor or his immediate subcontractor on and after August 10, 1933, due to his or their compliance with the applicable approved code or the President’s Reemployment Agreement, while the bill would go further and allow to the contractor who entered into a contract with the United States prior to August 10, 1933, and subcontractors such increased costs as they may have incurred due to the enactment of the National Industrial Recovery Act of June 16, 1933, and to this extent would impose on the United States such additional costs as the contractor and subcontractor may have incurred due to increased cost of materials, etc., purchased by them alleged to be the result of the act of June 16,1933.
It is a question of policy whether such broad relief shall be extended to Government contractors, but if such relief is to be extended to Government contractors and their subcontractors it would appear a matter of discrimination not to extend such relief to all contractors, regardless of whether they performed contracts with the United States or for private parties. Heretofore it has not been the policy of the law to extend pecuniary relief to contractors because of the enactment by the Congress of a general statute, as in the enactment of the law the Government operates in a sovereign capacity for which it is not responsible as a contractor or otherwise. If the United States is to depart from such procedure, It is not believed that the benefits in that connection should be limited to those contractors who may have had contracts with the United States and their subcontractors, but should-be extended to all contractors who had contracts prior to August 10, 1933, as stated in the act of June 16, 1934, or June 16, 1933, as stated in this bill, and who incurred increased costs by reason of the operation of the act of June 16, 1933.
In a letter of June 8, 1936, recommending the enactment of S-43UT, the Secretary of War said:
The contemplated action in allowing a claim for increased costs incurred after June 16, 1933, instead of after August 10,1933, appears to be meritorious in view of the fact that in numerous instances Government corn-tractors did, in fact, incur increased costs prior to Au *122 gust 10, 1933, but were, by the provisions of the former act, precluded from filing a claim for said increased costs.
The provisions of section 2 whereby a contractor may make a claim for increased costs occasioned by reason of a code or codes of fair competition or an agreement with the President or by reason of the increased cost of labor and materials due to the enactment of the National Industrial Recovery Act appears to be far more just and equitable than the similar provision which is carried in the former act. There have been numerous instances where contractors’ claims were, under the former act, disallowed on the grounds that the claimant had failed to show that the increased costs were due directly to compliance with an approved code or with the President’s Reemployment Agreement. In so disallowing these claims, the Comptroller General placed particular emphasis upon the word “directly.” However, a careful examination of these claims by the War Department disclosed that the same were, in fact, meritorious and worthy of consideration under any act the purpose of which was to afford relief to contractors who had incurred increased costs as a result of the enactment of the National Industrial Recovery Act. That is to say, in many cases it was shown that the contractors’ increased costs were due to the'general increase of prices (caused by the National Industrial Recovery Act or general economic conditions) and not directly resultant to compliance by the particular claimants with the provisions of the President’s Reemployment Agreement or applicable codes of fair competition.
None of the aforementioned bills amendatory of the act of June 16,1934, were enacted during the 74th Congress, but in the 75th Congress there were introduced bills S-3628 and PI. R. 10306 which were identical, and S-3628 became the act of June 25,1938, 52 Stat. 1197, under which this and other similar suits have been instituted. (See Report of the Senate Committee on Claims, #1996, 75th Cong., 3d sess., incorporating House Report #2609, 76th Cong., 3d sess., on H. R. 10306, and a letter of April 21, 1938, from the Secretary of War recommending the enactment of S-3628.) Neither of the bills introduced in the 75th Congress in 1938 attempted to amend the 1934 act but contained the direct provision providing for and authorizing suit in this court and for the allowance of claims for increased costs of performance after *123 June 16, 1933, as a result of the enactment of the National Industrial Recovery Act. The prior act of 1934 was, therefore, in effect repealed except those provisions of section 4 of the prior act of June 16,1934, with reference to the filing of claims with the head of the department for such increased costs as were incurred after August 10, 1933, as set forth in the proviso in section 1 of the 1938 act. The committees stated that “The purpose of the bill is to afford relief to such Government contractors * * * whose costs of performance of contracts entered into on or before August 10, 1938, -were increased as a result of the enactment of the National Industrial Recovery Act. The Secretary of War pointed out [letter of April 21, 1938] that the present bill is well designed, if enacted without change, to assure justice to all the claimants concerned, while affording reasonable protection of the proper interests of the Government.” In his letter of April 21, made a part of the committee report, the Secretary of War pointed out that “Upon enactment of the National Industrial Recovery Act of June 16, 1933 (48 Stat. 195), it became apparent that the effect of that act, and of the codes and agreements to be made thereunder, would be generally to increase the costs of labor and materials, and thus to increase the costs of performance of then pending Government contracts; the resulting manifest moral obligation of the Government to provide for the relief of the contractors against such increased costs of performance was promptly and definitely recognized in principle by the National Recovery Administration, in its Bulletin No. 4, issued in July 1933 * * *. From the viewpoint of those who believe the Government to be morally obligated to make full and equitable reimbursement of the increased costs in question, the act last above mentioned [June 16, 1934] has, in practical operation, fallen short of meeting that obligation * * *. The present bill, if enacted, would in effect largely repeal and supersede the original remedial act of June 16, 1934, supra. It would put an end to the authority of the Comptroller General under that act, and confer exclusive jurisdiction upon the Court of Claims * * *. It would eliminate many of the unduly restrictive terms and conditions of the original act, and leave the Court of Claims free *124 to proceed with the adjudication of claims presented to it, subject only to the broad limitations on its jurisdiction above mentioned, its own rules and customs, and the ordinary principles of justice and equity.”
From the foregoing legislative history, it appears very clearly that situations and conditions bringing about increased costs such as are involved hi the case at bar were contemplated and considered by the Congress and were intended to be covered by the language of the act defining the classes of claims for increased costs for which authority was conferred to enter judgment in whole or in part if shown, ■in fact, to have resulted from the enactment of the National Industrial Eecovery Act. This legislative history shows that one of the things which Congress wanted to eliminate by the act of 1938 was the specific limitation in the existing law that in no event should any allowance for increased costs exceed the amount by which the cost of performance subsequent to August 10,1938, was directly increased by reason of compliance with a code or with an agreement with the President. If Congress had intended, as counsel for the defendant insist, that compliance by the contractor, or the manifestation of a willingness and intention of complying with requests of Government officers and with codes or the Reemployment Agreement, we think it is clear, in view of the very careful consideration which the Congressional Committees gave to the matter, that some indication of such a purpose or intent would have been inserted in the act of 1938 or some reference made thereto in the committee reports. We think Congress left out such a limitation on allowance advisedly. The President’s Reemployment Agreement form relating to wages and hours of work was -not proposed until July 27, 1933, and many of the codes under the National Industrial Recovery Act were not approved until long after-wards. The code applicable to the present case was not effective until March 2, 1934, yet the jurisdictional act confers authority to enter judgments for increased costs from June 16, 1933. Moreover, in enacting in the 1938 act that the basis for the entry of judgment for increased costs should be the “result of the National Industrial Recovery Act”, Congress eliminated the word “directly” which had been used in *125 the prior act of June 16, 1934, in order to avoid the possibility that the court might place thereon the same construction which the Comptroller General had adopted as to the 1934 act, namely, that no allowance for increased costs should be made where other possible factors, economic or otherwise, and too remote to be said to be the result of the enactment of the National Industrial Recovery Act, entered into of affected some portion of the total increased costs incurred and claimed. In other words, Congress intended in the act of 1938 by the use of the broad language “for increased costs incurred as a result of the enactment of the National Industrial Recovery Act,” as stated in section 3 of that act, that judgments under the act shall be allowed upon a fair and equitable basis, and notwithstanding any provision of the act of June 16, 1934. That is to say, where the particular contractor incurred increased costs and the evidence submitted fairly and equitably established that a portion of such increased costs could fairly and equitably be said to have directly resulted from the enactment, operation, and effect of the National Industrial Recovery Act the amount of such portion should be determined on a fair and equitable basis and allowed, notwithstanding some portion of the increased costs incurred and claimed may have resulted from, or been caused by, factors, conditions, or circumstances too remote to be fairly attributable to the National Industrial Recovery Act. A study of the language .of section 2 of the act of June 16, 1934, shows that this was the real intent and purpose of that act in determining the amount allowable by reason of compliance, but the Comptroller General had not followed it but had held that where there was a lack of full corriflicmce with a code or an agreement no amount whatever should be allowed. This condition was fully pointed out to the Congressional Committees. Of course an expense which is the result of an act, and intended to be reimbursed to the contractor, must be the direct result of the act specified, and not merely indirectly or remotely caused or brought about by it. In this respect the act of 1934 relating to compliance and the act of 1938 relating to the enactment of the National Industrial Recovery Act arc the same in effect. But increased costs may in part be the *126 result of the enactment of the National Industrial Recovery Act and in part the result of other causes. Although the whole amount of increased costs for labor and materials may have been brought about and made necessary as a result of the enactment of the National Industrial Recovery Act, the particular contractor may not submit, or be able to submit, sufficient proof to fairly and equitably show that the whole of such expense did in fact so result. But the extent to which he does establish the fact that an expense was a direct result of the National Industrial Recovery Act,, he is entitled to judgment to that extent. It was doubtless for this reason that Congress inserted in the 1938 act the provision of section 4 that “This act shall not .be interpreted as raising any presumption or conclusion of fact or law but shall be held solely to provide for trial upon facts as may be alleged.”
The defendant makes a further argument, with reference to the first wage increase of 10 cents an hour on October 18, .1933, that the proviso to Section 1 of the act of June 25, 1938, shows clearly that it was not the intent of Congress in the enactment of the 1938 Act for suits in this court to allow recovery on claims of contractors of a type different from the type of claims which could be presented to and allowed by the Comptroller General under the act of June 16, 1934. That since the only type of claims which could be presented and allowed under the 1934 Act were claims “for increased costs incurred by reason of compliance on and after August 10, 1933, with a code or codes approved by the President under Section 3 of the National Industrial Recovery Act of June 16, 1933, or by reason of compliance with an agreement with the President under Section 4 (a) of the National Industrial Recovery Act,” it is clear from the proviso of the 1938 Act and the legislative history of that Act that Congress did not intend to open up a whole new field of claims nor. to authorize allowance of any recovery on claims unrelated to any approved code or the President’s Agreement.
This argument of the defendant, seeks to read into the proviso to Section 1 of the act of 1938 an exception to the clear language of Section 1 authorizing the court to allow ■recovery for all increased costs incurred “as a result of the enactment of the National Industrial Recovery Act” so as to *127 limit ilie authority of the court in any case to allow a claim and enter judgment therefor to only those cases where there had been compliance or proof of an intention or willingness to comply with a code or the Reemployment Agreement. We can find no support for this position in any language of the Proviso or of the Act or its history and we think the contention is answered in the negative by the language of the act of 1938 as a whole .
In the first place, the court cannot read an exception into the provisions of Section 1 of the 1938 Act which precedes the proviso, which the language of the proviso does not clearly contain, United States v. McElvain, 272 U. S. 633, 639; Fasulo v. United States, 272 U. S. 620, 628; second, the proviso admittedly does not exclude this case from the authority of the court to hear, determine and enter judgment, for this plaintiff did file a claim under the 1934 Act. Third, the proviso must be strictly construed and cannot be extended by implication, and when so construed it is only a limitation on the jurisdiction to entertain and consider suits on claims for increased costs by a certain class of contractors, — not a limitation on the authority of the court, in cases clearly within its jurisdiction, to allow and enter judgment for only those increased costs incurred as a result of compliance. In other words, where the court has jurisdiction of the particular case, its authority under Section 1, including the proviso, is limited only by the provision that the increased costs must be shown to have been incurred “as a result of the enactment of the National Industrial Recovery Act.” When the court has jurisdiction under this provision its authority to allow on the merits extends to any increased cost shoAvn to have- been the result of the enactment of the National Industrial Recovery Aot whether or not there had been compliance, or an effort to comply, with an approved code or the Reemployment Agreement. We think there is nothing in the language of the proviso that would require or warrant any other conclusion or limitation. Fourth, the only purpose or effect of the proviso, as its language shows, Avas to limit the consent to he sued to those con- • tractors who had filed a claim with an administrative, department concerned in accordance with Section 4 of the act *128 of 1934 (which had been in effect for a period of 4 years prior to the passage of the 1938 Act) where their contracts had been completed prior to that time, except as to contractors who had incurred increased costs prior to August 10,1933, and except, also, as to those contractors who had incurred increased costs under contracts which were not completed six months prior to the pasasge of the 1938 Act. It seems plain, therefore, that Congress did not intend by the proviso in Section 1 of the 1938 Act to limit the authority of the court in regard to the basis for the allowance of increased costs on the merits as specifically stated and defined in the enacting provision of Section 1. If the proviso does limit the authority of the court as to the basis for allowance in cases within its jurisdiction, i. e., to compliance with an approved code or an agreement, the proviso is in direct conflict with the whole of the enacting provision of the section which precedes it as to the basis for the allowance' and if so construed it would substitute an entirely different basis in all cas’es from that specifically provided in the enacting' clause. Defendant’s argument on this phase of the case would make it necessary for the court to use two bases for allowances and judgments for increased costs in cases clearly within its jurisdiction; first, in those cases where the contractor has filed a claim prior to the enactment of the 1938 Act, the basis would be “compliance with an approved code or the Eeemployment Agreement”, and second, in those cases where the contractor had not filed a claim prior to 1938 who had increased costs between June 16 and August 10, 1933, or had increased costs under a contract completed 5 months and 29 days before the enactment of the act of June 25,1938, or at any time thereafter, the basis for the- allowance and judgment would be “the result of the enactment of the National Industrial Recovery Act.” The proviso in Section 1 of the 1938 Act plainly does not limit the authority of the court to allow and enter judgment to those items of an administrative claim previously filed under the 1934 Act but clearly says that the jurisdiction “to hear, determine, and enter judgments against the United States upon the claims of contractors” (italics ours) in cases instituted in this court “shall apply only to such contractors whose ' claims were presented within the limitation period defined in *129 Section 4 of the Act of June 16,1934.” (Italics ours). Section 4 of that Act which required compliance as_a basis for allowance, provided that a claim must be “presented within six months from the date of approval of this Act or, at the-option of the claimant within six months after the completion of the contract.” Section 2 of the 1938 Act, which immediately follows the proviso in Section 1, provides that suits in this court by contractors upon claims for increased costs incurred as a result of the enactment of the National Industrial Eecovery Act “may be instituted at any time within six months after the enactment of this Act or, at the option of the claimant, within six months after the completion of the contract,” and (Section 3) that “judgments or decrees, if any,, under this Act, shall be made upon a fair and equitable basis,, and notwithstanding the bars or defenses of any alleged settlement or adjustment heretofore made, res adjudicata, laches, or any provisions of Public Act Numbered 369 as enacted on June 16,1934.” (Italics ours.) The argument of defendant ' amounts to an attempt to set up a bar or defense to a part plaintiff’s claim based on the provisions of the act of June 16,. 1934, namely, the provisions of that act, with reference to “compliance”, which defense Section 3 of the 1938 Act clearly says shall not be made or considered.
In view of the foregoing it seems obvious that Congress-did not intend in the 1938 Act that in suits in this court “compliance” should be the basis for allowance by this court when it expressly stated that the basis for the allowance and entry of judgment shall be “the result of the enactment of' the National Industrial Eecovery Act.” Especially is this true when it is noted, as hereinbefore set forth, that the Secretary of the Interior, the Secretary of War and the Comptroller General, clearly and specifically called the attention of the Congressional committees that considered the bills which resulted in the enactment of the 1938 act to the fact that the-provisions of that Act did change the basis for allowances- and judgments.
A consideration of the history leading to the enactment of the 1938 Act, a good deal of which has hereinbefore been set forth and discussed in the opinion, shows conclusively,, we think, that Congress was not considering a limitation on *130 the basis of allowance by this court of claims within its jurisdiction when it inserted the proviso to Section 1, but was considering only the fact that it did not desire to open up de novo after 4 years, to all government contractors the right to file suits in this court where they had not considered that they had a claim good enough to be filed under the 1934 Act. Congress may limit the consent of the United States to be sued to any class and on any grounds which it may choose, but such limitation on consent cannot be made the basis of the denial of a claim which is otherwise clearly within the terms of the Act and within the jurisdiction' of the court. Those contractors who majr have incurred increased costs as a result of the enactment of the National Industrial Recovery Act, but who did not file a claim and therefore do not come within the terms and conditions of the consent to be sued as set forth in the act of June 25, 1938, still have their remedy under the First Amendment to the Constitution to petition Congress for redress. By the proviso to Section 1 of the 1928 Act Congress simply reserved to itself the consideration of any claims for increased costs incurred as a result of the enactment of the National Industrial Recovery Act that might be made by contractors whose contracts were completed prior to the enactment of the 1938 Act and who had not theretofore filed a claim.
The proviso appears to have been inserted in the 1938 Act to take care of a situation concerning jurisdiction which had occurred to the Senate and House of Representatives and had been provided for in bills which had been introduced and considered by the Senate and the House in the 74th Congress, having for their purpose amendments to the existing act of June 16, 1934. H. R. 7293, introduced in 1935, amended the 1934 Act so as to include élaims of contractors for increased costs from June 16,1933, instead of August 10, 1933. That Act, amending and reenacting the 1934 Act, fixed the period for filing claims for increased costs to within six months from the date of approval of that Act. H. R. 7293 was passed by the House June 1, 1936.. A bill having the same purpose w^s introduced in the Senate in February 1936 as S. 4377, with the additional provision that allowance for increased costs should include not only costs resulting'from *131 compliance, but also the amount by which the cost of performance of such part of the contract as was performed subsequent to June 16, 1933 was increased by reason of the increased costs of labor and materials due to the enactment of the National Industrial Recovery Act. This bill also provided that claims for increased costs by reason of compliance with a code or an agreement of the President or by reason of the enactment of the National Industrial Recovery Act should be presented within six months from the date of the approval of that Act. ■ This bill also contained the additional provision conferring jurisdiction upon this court to hear, determine and render judgment upon any claim which had been rejected in whole or in part by the Comptroller General. The Secretary of War in a letter to the Senate Committee on June 8, 1936,- commented favorably on the provisions of S. 4377, especially as to the provision with reference to the allowance of-increased costs by reason of the enactment of the National Industrial Recovery Act and the extension of the time limitation as to filing claims and the provision allowing a suit in the Court of Claims on an adverse decision by the Comptroller General. He called attention to the fact that no limitation had been placed upon the time within which a contractor should institute suit in the Court of Claims and suggested that a period of six months be provided. The Senate Committee which considered H. R. 7293, which had passed the House, and S. 4377, then pending in the committee, amended H. R. 7293 to conform to the provisions of S. 4377 and favorably recommended the enactment of the same. As amended H. R. 7293 was passed by the Senate in June 1936 but failed of final passage by both Houses'during the 74th Congress which adjourned early in July 1936. In the 75th Congress there were introduced on March 8,1938, identical bills — S. 3628 and II. R. 10306 — the former became the act of June 25,1938.
From all this it seems, clear that by the proviso in Section 1 of the 1938 Act Congress was simply limiting the class of contractors who might sue in this court within six months after the enactment of that Act or within six months after the completion of the contract, and was not limiting and did not intend to. limit the-basis for the authority of the court to *132 allow and enter judgment to any basis other than “for-increased costs incurred as a result of the enactment of the-National Industrial Eecovery Act.” Compare General Insurance Co. v. New York Central R. R., 271 U. S. 228, 208; Sperry Gyroscope Company v. Arma Engineering Company, 271 U. S. 232, 235; Smith v. Apple, 264 U. S. 274, 278; Smyth v. Asphalt Co., 267 U. S. 326, 327, 328. We think that if Congress had intended by t he proviso to limit the basis for the-allowance and therefore the authority of the court to allow and enter judgment in a case within its jurisdiction to some-basis other than the “result of the enactment of the National Industrial Eecovery Act” as stated in the enacting clause,, it would have used some language in the proviso to indicate-that intention or some reference to it would have been made-in the committee reports, because everything that had gone before and everything that existed at that time as to authority to allow had been and was based upon “compliance”, and. that was the principal if not the whole reason for the unequivocal change in the basis.
It seems to have been recognized by Congress when enacting the 1938 act that in many cases it could probably not be-determined with mathematical certainty that the increased costs of labor or materials were wholly the result of .the enactment of the National Industrial Eecovery Act. Conclusions can only be drawn from surrounding facts and circumstances. In evident recognition of this the jurisdictional act. directs that judgments be rendered on a fair and equitable-basis. The mere fact that wages were increased after the enactment, standing alone, might not be sufficient to establish a right to recover. There may have been other contributing-factors. However, the fact that wages were increased after-the act became a law is admissible as an element of proof. If this is supported by surrounding circumstances and facts,, the proof may be sufficient to justify recovery. To hold, otherwise and to lay down a hard-and-fast rule that there can be no recovery unless there was a manifestation of an intention, or willingness, by the contractor on and after June 16, 1933, to cooperate and comply fully with the requests of Government officers, the proposed agreements and codes, would, result, as pointed out to the committees after the 1934 act. *133 was enacted, in meritorious claims for increased costs being ■denied which would practically nullify the 1938 statute. Each case therefore must stand on its merits.
As shown by the facts in the case at bar, the original agreement between the plaintiff and the defendant that twenty-five cents an hour was the prevailing wage rate for common labor, the posting of that rate, the subsequent enactment of the National Industrial Recovery Act, the conferences with Federal officials, the mailing out of the President’s Reemployment Agreement, the proposed code for the construction industry, the signing of the President’s Reemployment Agreement by other contractors in the same locality, the increases in wages made by them, the complaints of plaintiff’s employees and their requests for an increase in the rate of wages and their threat to quit unless wages were increased, and the conferences between plaintiff and its employees which resulted in October 1933, in an increase of ten cents an hour, and the clear proof of such increased costs, as well as other supporting facts and circumstances, taken together clearly show and justify the conclusion that the increase of ten cents an hour on October 18, 1933, as well as the subsequent increase of five cents an hour on January 19, 1934, was the direct result of the enactment of the National Industrial Recovery Act. The fact that plaintiff’s employees asked for an increase in the rate of pay and threatened to quit if their wages were not increased, after the National Industrial Recovery Act had been enacted and was being administered in the locality, does not require that the increase in wages allowed and paid should be disallowed. The evidence is sufficient to show, and there is no evidence to the contrary, that the demand for the increase and the allowance thereof were brought about and caused by the enactment of the National Industrial Recovery Act and its administration in that locality.
The evidence in Dravo Corporation v. United States, 93 C. Cls. 734, as the findings show (Count 1, findings 5-16, inclusive), the claimed increased cost of $6,692.95 for additional wages was not a result of the enactment of the National Industrial Recovery Act because other material factors entered into the increase in wages on March 5, 1934, which *134 exceeded the specific wage rates provided by the applicable code. That case is therefore not controlling here.
Under the facts established by the record in this case and under the broad provisions of sections 1 and 3 of the jurisdictional act of June 25, 1938, the plaintiff is entitled to recover the increased cost of ten cents an hour on October 18, 1933, amounting to $13,615.30, and the increased cost of five cents an hour on January 19,1934, amounting to $3,122.75. Judgment will therefore be entered in favor of plaintiff for $16,738.05. It is so ordered.
Jones, Judge; Whxtakee, Judge-, and Whaley, Chief Justice, concur.

 Ch. 560, 50 Stat. 1042; Ch. 561. 50 Stat. 1043; Ch. 615, 50 Stat. 1050; Ch. 184, 52 Stat. 1302; Ch. 329, 52 Stat. 1321; Ch. 346, 52 Stat. 1324; Ch. 663, 52 Stat. 1398; Ch. 670', 52.Stat. 1401; Ch. 783, 52 Stat. 1429; Ch. 826, 52 Stat. 1435.