Littleton, Judge,
dissenting:
The defendant interposes two defenses to plaintiff’s claim. The first goes to the entire claim made and is that plaintiff is not entitled to maintain this suit to recover increased costs that may have been incurred as a result of the enactment of the National Industrial Eecovery Act for the alleged reason that plaintiff did not file a claim, as required by the act of June 25, 1938, within six months after completion on June 8,1935, of the prime contract between the United States and Henry Ericsson & Company, and for the further reason that no extension of time was granted.
*506 The second defense is that if it should be held that under the circumstances the claim as filed was sufficient to give the court jurisdiction, no recovery can be had for the claimed increased labor costs for the reason that the evidence is not sufficient to show the amount of such increased cost, or that, if plaintiff did have an increased cost over the amount in•cluded in his bid for labor for the work to be performed ¡under his contract, such increased cost was not the result of the enactment of the National Industrial Eecovery Act.
Under the second defense defendant admits that if plaintiff is entitled to maintain the suit he is entitled to recover the amount of $84.20, increased material costs shown to have resulted from enactment of the National Industrial Eecovery Act.
Under the facts and circumstances established by the record I am of opinion that the claim for increased labor and material costs filed October 23, 1985, and later perfected, which claim was received and held under consideration by the proper and authorized officials of defendant without objection from the time it was presented until the trial of this case, was sufficient under the circumstances to entitle plaintiff to maintain this suit and to give this court jurisdiction under section 1 of the act of June 25, 1938. It appears from the evidence, about which there is no controversy,' that plaintiff’s representative and agent in Washington, L. K. McDorman, had several conferences prior and subsequent to October 8, 1935, with the authorized officials of the Procurement Division of the Treasury Department, which was the administrative establishment with which a claim under the act of June 16,1934, was required to be filed. On October 8, plaintiff, through his agent, wrote a letter addressed to the Assistant Director, Public Works Branch, Procurement Division, in which it was stated: “Please be advised that it is our intention to file a claim for increased cost due to N. E. A., for our subcontract with the Henry Ericsson Company, for construction of the U. S. Post Office, Columbus, Ohio.” The plaintiff’s purpose in filing this letter and the letter of October 25, with the Procurement Division after having conferred with the legal section of that division was to place himself on record as making a claim under the act of June 16, 1934, *507 with the understanding by both parties that he would be privileged later to present detailed information itemizing the claim. The Procurement Division so understood and consented to this procedure, and no objection was ever made by the Procurement Division or anyone else to this procedure. It would seem that the chief counsel of the Procurement Division would not have concurred in that procedure unless it was in accordance with the policy of the Comptroller General. Both he and the Comptroller had to pass upon the claim. Shortly after the above-quoted letter of October 8,1935, was filed with the Procurement Division, plaintiff’s representative was orally advised by the legal section of the Procurement Division that it would be better in making claim, to file a statement with the Procurement Division setting out some amount, even if only an approximate amount, and that without the claiming of some amount the letter of October 8, 1935, would not be sufficient to constitute a claim under the act •of June 16, 1934. In other words, plaintiff was told that if he filed a claim for a definite amount he could complete the claim with itemized schedules later. Thereupon plaintiff filed with the Procurement Division on October 23, 1935, another letter stating: “Please be advised that it is our intention shortly to submit a claim for increased cost due to N. R. A., in approximate amount of $4,000.00, in connection with our subcontract for plastering, incidental to construction of U. S. Post Office, Columbus, Ohio.” This letter was received and filed, and no objection was made to its sufficiency as a claim subject to later itemization, as previously discussed by the legal section of the Procurement Division and plaintiff’s agent. Upon receipt of the last-mentioned letter of October 23, 1935, the Procurement Division furnished plaintiff with forms, which plaintiff had requested, for preparation and presentation of the various ■ detailed items and information making up the claim. On September 4,1937, the itemized schedules of the claim on the forms supplied had not been completed and presented, and, on that date, the chief counsel of the Procurement Division wrote plaintiff a letter, as set forth in finding 8, in which he stated to plaintiff, after referring to plaintiff’s letters of October 8 and 23 and the furnishing of forms, that “In view *508 of the fact that no further word has been heard from you and the claim in question has not been filed, it is assumed that you have abandoned the claim and the files of this Department will be closed.”
The prime contract with the government was completed June 8,1935, and the six-months’ period mentioned in section 4 of the act of June 16, 1934, for presentation of a claim expired December 8, 1935, or one year, eight months, and twenty-six days before the above-mentioned letter of the chief counsel of the Procurement Division was written to plaintiff on September 4, 1937. It is obvious therefore that the Procurement Division, Treasury Department, in which the statute required the claim to be filed, considered that plaintiff’s letter of 'October 23, 1935, setting forth the claim in the approximate amount of $4,000, was sufficient to satisfy the requirements of the act of June 16, 1934, subject to completion by the later filing of the itemized schedules of the claim.
Upon receipt of the above-mentioned letter of September 4, 1937, from the chief counsel of the Procurement Division, plaintiff replied that all necessary papers and forms had been properly filled out by him and were in the hands of his agent in Washington and stated that it was his understanding that he had already filed the claim. Thereafter, on October 15, 1937, itemized schedules of the claim for increased costs were transmitted to the Procurement Division with a letter making reference to the previous letters between the parties, with the statement— “Please advise at an early date what further records will be necessary in support of this claim, as this office in Washington is acting as agent to the Claimant.” Upon receipt of these itemized schedules of the claim, the chief counsel of the Procurement Division wrote plaintiff on November 4, 1937, acknowledging receipt of the letter of October 15 and the documents therein listed regarding the claim for relief under the act of June 16,1934, and stating that “Consideration will be given your letter and its enclosures in connection with the claim.” The claim was thereafter held under consideration by the proper and the authorized officials of defendant without any further word to plaintiff concerning its timeliness or its sufficiency. No *509 final action appears to have been taken on the claim by the Comptroller General up to the time of passage of the act of June 25,1938, conferring upon this court jurisdiction to hear and determine such claims.
In these circumstances, I think this suit should not be dismissed for lack of jurisdiction on the ground that plaintiff did not present a claim within the time allowed by section 4 of the act of June 16, 1934. Section 1 of that act provided that any contractor or subcontractor desiring an adjustment and settlement with respect to any such contract for increased costs incurred after August 10, 1933, “shall file with the department or administrative establishment concerned, a verified claim itemizing such additional cost.” This section did not fix the time within which the claim was to be filed. Section 4 of the act did specify the time within which a claim might be presented and declared that “No claim hereunder shall be considered or allowed unless presented within six months from the date of approval of this act, or, at the option of the claimant, within six months after the completion of the contract, except in the discretion of the Comptroller General for good cause shown by the claimant.” Under this provision of the statute it seems clear that a late presentation or filing of a claim, or the timely filing of a claim and late filing of itemized schedules of the claim, was not fatal if such a claim was received and considered without objection. The statute expressly conferred discretion with respect thereto upon the Comptroller General. The broad claim filed on October 23, 1935, on time, and the completed itemized schedules filed on October 15, 1937, remained under consideration without any objection for more than 7 months after the letter of the chief counsel of the Procurement Division of November 4, 1937, was written to plaintiff stating that consideration would be given to the enclosures in connection with the claim, and before the act of June 25, 1938, was enacted. The claim to which the chief counsel had reference was plaintiff’s letter of October 23, 1935, setting forth his claim in the approximate amount of $4,000, which letter was filed well within the six-months’ period allowed by section 4 for presenting a claim.
Counsel for defendant argues however that the letter of *510 October 23, 1935, was not a claim within the meaning of section 4 of the 1934 act; that no verified, itemized claim as required by section 1 of that act was presented within six months after completion of the prime contract, and that the Comptroller General never extended the time for presenting the verified items of the claim. It was not necessary under the act for the Comptroller General to issue an order extending the time for filing, or for the completion of a claim, and the facts established by the evidence as to the circumstances and conditions under which the claim was made, perfected, and held under consideration are sufficient to justify the conclusion that the claim, as made, was sufficient to give this court jurisdiction to hear and determine the claim under the provisions of section 1 of the act of June 25, 1938. In any event I think the defendant is not, in the circumstances, in a favorable position to take advantage of the way in which the Procurement Division dealt with plaintiff, to his injury, especially in view of the remedial character of the acts of June 16,1934, and June 25, 1938, as expressed in the long Congressional history of the act of June 25,1938, as to the purposes of that act and the intention of the former act of 1934.
Plaintiff supposed as a result of what had happened, as recited in the findings, that his claim was in and would receive consideration as the General Counsel of the Procurement Division told him it would, and as, under the circumstances, it doubtless would if the act of June 25, 1938, had not been enacted before the claim was finally considered and acted upon by the Procurement Division and the Comptroller. If the General Counsel of the Procurement Division, with whom under the 1934 act plaintiff was authorized and required to deal in the preliminary stages of making and presenting his claim, had, in October 1935, advised plaintiff that a complete itemized verified claim must be on file before the end of a six-months’ period, instead of advising that a claim for a definite amount filed within the six-months’ period would be sufficient and could be completed and perfected later, and if the General Counsel had, when he wrote the letter of inquiry of September 4, 1937, or the letter of November 4, 1937, after the itemized schedules, of the claim *511 timely made, had been sent in, advised plaintiff that the claim was late instead of advising that consideration would be given to the itemized schedules in connection with the claim which had theretofore been made, plaintiff would have had an opportunity and the right under the 1934 act to resort to the Comptroller General for additional time. In view of the circumstances which resulted in the delay in submitting the itemized schedules, I have no doubt that plaintiff would have been successful in obtaining a favorable decision by the Comptroller General on the matter of filing or completion of the claim. Plaintiff lost this opportunity when the act of June 25, 1938, was enacted for, by that act, the Comptroller General no longer had jurisdiction of such claims or any question which might theretofore have been presented to him in connection therewith. Section 3 of the act of 1938 seems to have contemplated such a situation. In these circumstances and in view of the broad language of the 1938 Act (section 3) that in the consideration and adjudication of claims made the basis of suits here, the judgments or decrees of this court “shall be allowed on a fair and equitable basis, and notwithstanding the bars or defenses of any alleged settlement or adjustment heretofore made, res adjudicata, laches, or any provisions of Public Act Number 369, as enacted on June 15,1934,” I think the purpose of the 1938 act is carried out by our taking jurisdiction.
In addition to what has been said above as to the sufficiency, under the circumstances, of the letter of October 23, 1935, and the schedules subsequently submitted, as a claim under the act of June 16,1934,1 am of opinion that we have jurisdiction under a fair and reasonable interpretation of all the provisions of the act of June 25, 1938, in the light of its intended liberal purposes to afford contractors an opportunity to have their claims considered and adjudicated in this court, even if it should be necessary to say that the broad claim filed October 23, 1935, which was intended to be later perfected by the necessary itemized schedules, was technically not the complete claim which sections 1 and 4 of the act of June 16,1934, contemplated should be filed within six months after passage of that act or after the completion of the contract, or at a later date in the discretion of the Comptroller *512 General for good cause. Compare McCloskey & Co., 98 C. Cls. 90, and Kawneer Co., et al., 100 C. Cls. 523. I think that in cases such as this the 1938 act contemplated that we might pass upon the matter of good cause for late filing where the Comptroller had not done so, or had not had an opportunity to do so. The recorded legislative history and the reports of the Congressional Committees on both the acts of June 16, 1934, and June 25, 1938, show that it was the Congressional intent and purpose that these acts be liberally interpreted to accomplish the main purpose of having claims of Government contractors for increased costs due to compliance with the President’s Reemployment Agreement and/or to the enactment of the National Industrial Recovery Act determined on a fair and equitable basis without regard to technicalities. The act of June 25, 1938, giving this court jurisdiction to hear and determine claims of contractors who had presented claims under the act of June 16, 1934, was enacted because, as the Congressional history shows, the Comptroller General had interpreted and applied the provisions of the 1934 act too strictly. And the legislative history of the 1938 act shows, as was set forth in the written communications incorporated in various committee reports, that it was the intention of this act to put an end to the authority of the Comptroller General further to consider claims which had been presented under the 1934 act.
The defense interposed to our jurisdiction in this case is in effect that plaintiff was guilty of laches in failing to present, under the act of June 16, 1934, to the Procurement Division of the Treasury Department a complete itemized claim as described in section 1 of that act, and that since the Comptroller General did not reach the claim for consideration and decision before enactment of the act of June 25, 1938, and therefore did not exercise or have occasion to exercise the discretion conferred upon him by the 1934 act with reference to late presentation or as to the perfection and completion after expiration of six months of the broad claim presented in time, we are without authority under the ‘proviso of section 1 of the 1938 act to do other than to reject the claim and dismiss the petition notwithstanding the good faith of the Government officers concerned and the plaintiff in connection *513 with the way in which the claim was first presented and later perfected, and notwithstanding the fact that the claim is meritorious in its legal and equitable aspects. I think section 3 of the 1938 act was inserted to guard against such a defense. It seems clear enough that in the enactment of the 1938 act Congress knew and had in mind when it inserted section 3 of the act of 1938 that in addition to claims upon which the Departments concerned and the Comptroller General had acted, there would doubtless be a number of claims which had been presented or filed by contractors under the 1934 act which the departments or administrative establishments concerned, or the Comptroller General, had not reached or taken up for the purpose of making findings of fact and decisions, and that it was for this reason that Congress inserted section 3 of the 1938 act directing that judgments of this court should be allowed upon a fair and equitable basis “notwithstanding the bars or defenses of any alleged settlement or adjustment heretofore made,res ad judicata, laches, or any provisions of Public Act Numbered 369, as enacted on June 16,1934.” The proviso in section 1 of the 1938 act that “this section shall apply only to such contractors, including completing sureties and all subcontractors and materialmen, whose claims were presented within the limitation period defined in section 4 of the Act of June 16,1934,” should be interpreted and applied on the question of our jurisdiction of the claims made in this court in the light of the provisions of section 3 above quoted. All parts of a statute must be given proper effect. Enacting provisions or clauses of a statute may limit, modify, or clarify the language or intent of a proviso therein, and in such cases such enacting provisions and provisos should be given their proper weight when interpreting the statute for the purpose of arriving at its intention as gathered from all of its provisions. When so interpreted and applied I think we have jurisdiction to adjudicate the present claim.
It is a reasonable and fair interpretation of the proviso to section 1 of the 1938 act when considered in the light of section 3 of that act to say that in situations such as are disclosed by the peculiar facts in this case good cause existed for the failure of plaintiff strictly and literally to comply with the language of section one of the act of June 16, *514 1934, as to the filing of a complete itemized claim within six months, and that, in the circumstances, plaintiff was sufficiently diligent, was not guilty of laches, and that the claim here made is within our jurisdiction under a fair and equitable interpretation of the act of 1938, including the proviso of section 1, and in accordance with the real intent and purpose of the act as disclosed by its language and legislative history.
Plaintiff incurred increased labor costs in the amount of $3,042.55. (Finding 5.) Plaintiff made his bid and entered into a contract with Ericsson as a result of that bid upon the basis of the hourly wage rates for plasterers, plasterer helpers, carpenters, and common labor as set forth in the findings, which wage rates were less than the wage rates which it was necessary for plaintiff to pay such mechanics and laborers as a result of the enactment of the National Industrial Kecovery Act, when he came to perform his contract. Plaintiff made his estimate in January 1933 of the labor costs and in preparing his bid for the subcontract plastering work, which he submitted to the prime contractor in February 1933, and upon the basis of which the contract with the prime contractor was subsequently entered into May 16, 1933, the wage rates at which he could then and subsequently. except for the enactment of the National Industrial Recovery Act and the issuance of the President’s Reemployment Agreement thereunder, obtain Union mechanics and Union and non-Union labor were 90 cents an hour for plasterers, 50 cents an hour for plasterers’ helpers (hod carriers), 05 cents an hour for carpenters, and 40 cents an hour for labor. These wages were later increased in August 1933 (finding 5). Defendant argues, however, that paragraph 5 of article 6 of plaintiff’s subcontract required him to employ Union labor and, in the end, he paid only the Union scale of wages. That is not decisive of the question presented here. Representatives of the labor Union who testified in the case admitted that at the time plaintiff made his bid and entered into the contract, and thereafter until the National Industrial Recovery Act was enacted, skilled and semi-skilled Union labor could be and was being employed in Columbus, Ohio, and vicinity, at hourly wage rates which were less than the *515 existing Union schedule of hourly wages for such Union labor, which was due to the widespread unemployment and the small amount of building construction being carried on in that territory. As these Union representatives expressed it, the men worked for whatever they could get prior to the N: I. R. A.
Before making his bid, plaintiff made an investigation among other contractors and among experienced plasterers, carpenters, and laborers, and based his bid as to labor costs upon the highest hourly wage rate within the range of wage rates which he found were being paid for such labor and for which he found, from inquiry among the men, they were willing to work.
Plaintiff signed the President’s Reemployment Agreement shortly after August 10, 1933. The Code of Fair Competition for the construction industry which was in effect during practically all the time that work was being done under plaintiff’s subcontract was approved January 31, 1934. A minor part of plaintiff’s subcontract work was performed from August 25,1933, to March 20,1934, but the main portion of the work was performed from April 1 to November 22,1934. In August 1933, about the time plaintiff signed the Reemployment Agreement, authorized representatives of the labor Unions in Columbus made demands upon plaintiff, as well as others, for payment of higher hourly wages than were then being paid, based on the purposes of the National Industrial Recovery Act and the statements of the President in Release #200 by the National Recovery Administration. These demands on behalf of labor became the subject of conferences between representatives of the employers and employees, including plaintiff, which resulted in agreements to increase wages over the then and previously existing wage rates, and at which it was admitted labor could be obtained at the time plaintiff made his bid and signed the subcontract with Ericsson. It was necessary for plaintiff to make the increase in wages which he paid, and the evidence shows and we have found as a fact that such increase in wages in the total amount of $3,042.55 was caused by and was the result of the enactment of the National Industrial Recovery Act. Plaintiff should therefore be given judgment for this amount.
*516 As a result of the enactment of the National Industrial Recovery Act and by reason of compliance by plaintiff with the provisions of the Builders’ Supply Industry Code with reference to prices for certain materials, plaintiff’s cost of performance of his contract was also increased in the amount of $84.20 for certain material acquired and used by plaintiff in performance of his contract. The defendant admits that this item of increased material cost was the result of the enactment of the National Industrial Recovery Act.
I would enter judgment in favor of plaintiff for $8,126.75.
Madden, Judge, concurs in the foregoing opinion.